UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:19-cv-00157-JAW |
| | ) | |
| SHANNON R. MOORE, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| STEVE THOMES, | ) | |
| | ) | |
| Party-in-Interest. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO VACATE JUDGMENT**

A defendant brings a motion to vacate a judgment of foreclosure and sale of property in favor of the plaintiff, arguing that the Court misapplied state law by allowing the action to proceed when the plaintiff had not established certain statutory requirements. The Court denies the motion and concludes that the defendant has not demonstrated grounds for relief under Federal Rule of Civil Procedure 60(b). Finally, the Court addresses its final order imposing filing restrictions on the defendant pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993), and concludes that as the defendant filed her motion between the Court's Order to Show Cause and its final *Cok* Order, her motion is not barred by the Court's filing restriction.

## I.     BACKGROUND

On April 12, 2019, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (U.S. Bank), filed a foreclosure complaint against Shannon R. Moore as Defendant and Steve Thomes as Party-in-Interest.[1]  *Compl.* (ECF No. 1) (*Compl.*).  On November 15, 2021, the case came for trial before this Court.  *Min. Entry* (ECF No. 214); *see also Trial Order* at 1 (ECF No. 217) (*Trial Order*). Representing U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (U.S. Bank) was Attorney Reneau Longoria; Shannon R. Moore appeared pro se; Steve Thomes appeared as a party-in-interest.  *Id.*

Based on the exhibits admitted into evidence at the trial, the Court found that Ms. Moore had breached a condition of her mortgage on 69 Veranda Street, Portland, Maine, 04103, and her promissory note dated November 22, 2005; that Ms. Moore last made a payment on that promissory note and mortgage on October 1, 2013, which was credited on December 30, 2013; that the total amount due and owing on the promissory note and mortgage to U.S. Bank as of November 15, 2021 was $335,351.10; that U.S. Bank was entitled to a judgment of foreclosure and sale; and that the mortgage issued by Ms. Moore dated October 29, 2015, was void because it was fraudulent.  *Id.* at 5-6.  On November 19, 2021, the Court issued a judgment of foreclosure and sale in favor of U.S. Bank.  *J. of Foreclosure and Sale* (ECF No. 218) (*J.*).

---

[1]      Steve Thomes has been defaulted.  *Compl.* ¶ 22; *Order Granting Mot. for Entry of Default as to Steve Thomes* (ECF No. 10).

On December 13, 2021, Ms. Moore filed a motion to vacate void judgment. *Def.'s Mot. to Vacate Void J.* (ECF No. 224) (*Def.'s Mot.*).  On January 3, 2022, U.S. Bank responded to the motion.  *Pl.'s Resp. in Opp'n to Def.'s Mot. to Vacate Void J.* (ECF No. 227) (*Pl.'s Opp'n*).  On January 20, 2022, Ms. Moore replied.  *Reply to Purported Pl.'s Resp. to Opp'n to Purported Def.'s Mot. to Vacate Void Purported Action* (ECF No. 228) (*Def.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Shannon R. Moore's Motion to Vacate[2]

In her motion to vacate judgment, Ms. Moore cites Federal Rule of Civil Procedure Rule 60 arguing that the Court's November 15, 2021, judgment is void because the Court "transcended the limits of its authority." *Def.'s Mot.* at 1-2.  She contends that under diversity jurisdiction the Court was obligated to apply the substantive law of the state of Maine, in this case 14 M.R.S. § 6321, Maine's foreclosure proceeding statute.  *Id.* at 2.  She says a foreclosure judgment may not be granted without proof of ownership and evidence of the mortgage note, the mortgage, assignments, and endorsements of the mortgage note and mortgage, all of which must be "genuine documents."  *Id.* at 2-3.  Ms. Moore claims that because the Court did not have "genuine documents" the Court lacked "the fundamental foundation for the action to commence" and the action was therefore "void ab initio 'from the beginning.'"  *Id.* at 3.

---

[2]   Ms. Moore replied to U.S. Bank's opposition.  *Def.'s Reply* at 1-5.  However, the Court does not separately discuss her reply as Ms. Moore merely repeated the same arguments she made in her initial motion to vacate the judgment.

She cites portions of the trial transcript and argues that the Federal Rules of Evidence cited by the Court allowing U.S. Bank's documents into evidence "are in direct conflict with the State of Maine's substantive law in this purposed action for foreclosure." *Id.* at 6. Ms. Moore further points to portions of the transcript where Attorney Longoria states that she has "certified copies" of the documents as evidence that the documents were not genuine, and U.S. Bank therefore did not have standing to bring the foreclosure case. *Id.* at 8.

**B.     U.S. Bank's Opposition**

U.S. Bank opposes Ms. Moore's motion to vacate the judgment, arguing that Ms. Moore has been making the same arguments from the beginning and "had a full opportunity to advance [her] defense at the time of trial and yet determined mid-way through the trial that she would abandon that opportunity and left the courtroom." *Pl.'s Opp'n* at 2. U.S. Bank says that Ms. Moore misstates Rule 60(b) and improperly argues that the mortgage note was insufficient when the Court entered judgment after "the careful application of the rules of evidence and examination of the original Note." *Id.* at 3. U.S. Bank submits that "the original Note and Mortgage [were] presented to the Defendant for her examination prior to trial in open Court" and the Court specifically found that "these documents were public records, had been attached to the Complaint and disclosed during discovery." *Id.* U.S. Bank says that these documents were admitted after the Court concluded they were admissible under Federal Rules of Evidence 901, 902, and 1003. *Id.* U.S. Bank closes by noting that Ms. Moore's latest filing is the type of "frivolous motion practice" that was subject to the Court's December 23, 2021, *Cok* Order. *Id.* at 4.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . mistake, inadvertence, surprise, or excusable neglect; . . . fraud, . . . misrepresentation, or misconduct by an opposing party; the judgment is void; . . . or . . . any other reason that justifies relief.  FED. R. CIV. P. 60(b)(1)-(6).  "[R]elief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly."  *Giroux v. Fed. Nat. Mortg. Ass'n*, 810 F.3d 103, 106 (1st Cir. 2016) (alterations in *Giroux*) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002)).

> [A] party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum, that [her] motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, [s]he had the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.

*Karak*, 288 F.3d at 19.

## IV.   DISCUSSION

### A.   The Admission into Evidence of the Promissory Note and Other Certified Documents

#### 1.   The Trial Record Concerning the Admissibility Ruling

Ms. Moore is correct that this Court has diversity jurisdiction over this case and is required to apply state of Maine substantive law.  However, Ms. Moore has not met her burden under Rule 60(b) of showing that the Court erred in applying 14 M.R.S. § 6321.  Section 6321 provides that a mortgagee must "certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage

and all assignments and endorsements of the mortgage note and mortgage." 14 M.R.S. § 6321. Ms. Moore's core argument is that U.S. Bank did not meet the requirements of the statute because they did not provide original, genuine documents to establish proof of ownership of the mortgage note, and proof of assignment of the mortgage note and mortgage. The Court turns to Ms. Moore's objections.

During trial, U.S. Bank moved for admission as Exhibit One a copy of the original note. *Tr. of Proceedings* at 6:13-14 (ECF No. 221) (*Tr.*). Contemporaneous with moving its admission into evidence, Attorney Longoria represented that she had provided a copy of the promissory note to Ms. Moore and, upon Ms. Moore's request, Attorney Longoria had provided the actual original note to Ms. Moore just before the start of trial. *Id.* at 6:15-17.

Attorney Longoria called as U.S. Bank's first witness, Michael Paterno, an employee of Fay Financial Services, the mortgage servicer of the Moore loan on behalf of U.S. Bank. *Id.* at 5:25-6:7. Mr. Paterno confirmed that he had seen the original promissory note, had compared the original note to the copies of the note that Attorney Longoria had shown to Ms. Moore, and testified that the copy of the note was identical to the original. *Id.* at 6:8-7:6.

When Attorney Longoria moved for the admission of the note, Ms. Moore objected on the grounds that "it's not the genuine mortgage," that the copy had been "bifurcated," and that it had "been stapled and unstapled, stapled again." *Id.* at 7:11-13. Ms. Moore explained that the note had been "punctured and there are allonges attached to it that weren't there at the date of the original signature." *Id.* at 7:14-15.

She claimed that there was nobody who could "attest to the [note's] validity" and the note had been "passed through numerous hands over the course of many years." *Id.* 7:15-18.  Ms. Moore reiterated that "[i]t is not the genuine note." *Id.* at 7:19.

Hearing Ms. Moore's objection, the Court asked Attorney Longoria whether she could establish how U.S. Bank came upon this note. *Id.* at 7:20-22.  Mr. Paterno confirmed that as loan servicer, Fay Financial Services had within its business records the original loan origination documents for this loan. *Id.* at 9:13-10:19.  Once Attorney Longoria established this additional evidentiary foundation and moved again for its admission, the Court inquired of Ms. Moore whether she had any objection. *Id.* at 10:20-22.  Ms. Moore replied that she still objected to its admission because it "does have alterations, bifurcations, additional pages after I signed it." *Id.* at 10:23-25.

The Court observed that the original note that was before the Court fit within Federal Rule of Evidence 803(6) because U.S. Bank had established that it was a record "of a regularly conducted activity of a business organization . . .." *Id.* at 11:1-5.  As the Court had both the original note and a copy of the note before it, the Court inquired of Ms. Moore whether she was contending that the copy should not be admitted into evidence. *Id.* 11:5-24.  Ms. Moore objected to the copy of the note on the ground that "it should be the genuine note" and a copy "doesn't count as evidence of her having the documents to start the foreclosure." *Id.* at 12:5-7.

The Court began to explain its view of Ms. Moore's objections to the admission of the copy of the promissory note under Rules of Evidence 1003 and 1004. *Id.* at

12:8-19.  However, Ms. Moore interrupted the Court.  *Id.* at 12:17-20.  After indicating that the note was likely admissible, the Court offered Ms. Moore the opportunity to cross-examine Mr. Paterno as to whether Exhibit One was the original note and whether the copy of the original note was an accurate copy of the original.  *Id.* at 12:22-13:2.  Ms. Moore replied that she had "seen the note," but that she would "like to see it again."  *Id.* at 13:3-4.  When Ms. Moore began to offer evidence about the note, the Court observed that she would have a chance to testify, but it was not the time for her to do so.  *Id.* at 13:7-11.  At that point, the Court told her that she could ask any questions of Mr. Paterno about the note.  *Id.* at 13:11-15.  Ms. Moore declined to ask any questions of Mr. Paterno.  *Id.* at 13:17 ("I don't have any questions for him").  Over Ms. Moore's objection, the Court admitted a copy of the promissory note pursuant to Federal Rules of Evidence 803(6), 1003, and 1004.  *Id.* at 12:15, 13:24-14:13.

Attorney Longoria then presented certified copies of Plaintiffs' Exhibits 2, 3, 4, 6, 7 and 8 and moved their admission.  *Id.* at 14:15-15:2.  These documents included the original mortgage and five assignments, all of which had been recorded in the Registry of Deeds for Cumberland County and copies of all of which had been certified.  *Id.* at 15:10-24.  Furthermore, Attorney Longoria represented that each of these documents had been attached to the original Complaint and provided in discovery to Ms. Moore.  *Id.* at 15:23-16:7.  Ms. Moore objected to the admission of these documents because they were not the original records.  *Id.* at 16:8-18:2.

8

The Court admitted the records over Ms. Moore's objection. *Id.* at 18:3-19. As the Court was making its ruling, a voice came from the back of the courtroom, saying "Let's go. Let's go. See you later." *Id.* at 18:20-21. Ms. Moore spoke and said: "I'm sorry. The case hasn't started. I maintain my argument." *Id.* at 18:22-23. She then walked out of the courtroom. *Id.* at 19:4-5 ("THE COURT: Well, the record should reflect that Ms. Moore walked out of the room").

### B.    Shannon Moore's Objections to the Admission of the Copy of the Promissory Note and Copies of Other Certified Documents

#### 1.    Maine's Foreclosure Statute Does Not Impose a Statutory Standing Requirement

In her motion to vacate the foreclosure judgment, Ms. Moore presents her contention that both in its foreclosure complaint and at the trial, U.S. Bank failed to produce the original promissory note and assignments as required by Maine law. *Def.'s Mot.* at 1-3. As such, in Ms. Moore's view, U.S. Bank failed to comply with Maine foreclosure law and this Court never had jurisdiction over the foreclosure. *Id.* at 1-3. Ms. Moore expands this theory by referencing the Maine version of the Uniform Commercial Code and its definition of "genuine." *Id.* at 3 (citing 11 M.R.S. § 1-A(19)).[3] This definition reads: "'Genuine' means free of forgery or counterfeiting." 11 M.R.S. § 1-1201(19). Ms. Moore maintains that the documents U.S. Bank submitted for admission into evidence were not "genuine" within the meaning of this definition. *Def.'s Mot.* at 3. Finally, Ms. Moore claims that the Court erred in

---

[3]    This definitional subsection has been renumbered and is now found at 11 M.R.S. § 1-1201(19). The definition Ms. Moore quotes is the same in both subsections.

applying the Federal Rules of Evidence to this foreclosure action since Maine substantive law must take precedence. *Id.* at 6.

The Court rejects Ms. Moore's interpretation of the requirements of the Maine foreclosure statute, 14 M.R.S. § 6321.  Maine statutory law states only that in proceeding with a foreclosure, a mortgagee "shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage."  14 M.R.S. § 6321.  Nowhere in the statute does it state, as Ms. Moore believes, that to initiate a foreclosure, the mortgagee must produce the original of these documents.  Instead, the mortgagee must "certify proof of ownership of the mortgage note" and produce "evidence of the mortgage note, mortgage and all assignments." *Id.*

In her motion, Ms. Moore contends that the statutory language in § 6321 is "the standing clause" and U.S. Bank never complied with this requirement of the Maine statute. *Def.'s Mot.* at 6.  Ms. Moore is simply wrong.  In *Bank of America v. Cloutier*, 2013 ME 17, 61 A.3d 1242, the Maine Supreme Judicial Court firmly rejected this very argument, namely that this sentence within § 6321 is a standing clause:

> [T]he first sentence in section 6321 clarifies that it is consistent with section 3-1301 of the UCC.  It provides: "After breach of condition in a mortgage of first priority, the mortgagee *or any person claiming under the mortgagee* may proceed for the purpose of foreclosure . . . ." 14 M.R.S. § 6321 (emphasis added).  <u>This sentence, in the first paragraph, suggests that the "certify proof of ownership of the mortgage note" requirement, in the third paragraph, does not impose a standing requirement, because standing to bring a foreclosure action has been addressed in the first paragraph.</u>  The "proof of ownership" language appears in the middle of a long paragraph concerning procedural requirements and

> adjoins another phrase concerning evidentiary requirements. As between the first and third paragraphs, the first controls standing and the third addresses procedural prerequisites that an entity with standing must satisfy to maintain an action.

*Id.* ¶ 15 (emphasis supplied). Contrary to what Ms. Moore believes, the Maine Supreme Judicial Court has written that the language, "'certify proof of ownership of the mortgage note,' requires only that a foreclosure plaintiff identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note." *Id.* ¶ 21.

### 2.   Maine Substantive Law and the Federal Rules of Evidence

The Court also rejects Ms. Moore's contention that by referring to "produce evidence," the Maine statute was imposing a substantive law requirement on diversity cases in federal court and replacing the federal court's application of its own rules of evidence at trial. Such an interpretation would run counter to fundamental law as pronounced by the United States Supreme Court and would be of dubious validity. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). After all, the Maine statute only stipulates that the mortgagee must "produce evidence," it does not begin to suggest how a trial court will determine what evidence will be admissible at trial. In the Court's view, the Maine statute implicitly leaves that job in Maine courts to the Maine Rules of Evidence and in federal courts to the Federal Rules of Evidence.

Addressing an analogous issue, the First Circuit rejected an argument that a federal district court, sitting in diversity, should apply Maine Rule of Evidence 803(6). *U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 539 (1st Cir. 2019) (Souter, J.). Instead, the First Circuit concluded that the district court properly applied Federal Rule of

Evidence 803(6) in its evidentiary rulings during a trial on a mortgage foreclosure. *Id.* ("The District Court was doing nothing other than following the ordinary practice of federal courts to apply the Federal Rules of Evidence in diversity cases"). Moreover, the *Jones* Court concluded that Maine Rule of Evidence 803(6) was identical to Federal Rule of Evidence 803(6). *Id.* ("Because there is no material conflict between the Maine Rule and the Federal Rule, there is no ground for requiring the Maine Rule to be applied in this case").

### 3. The "Produce Evidence" Requirement

As noted earlier, the Maine statute does require that the mortgagee "produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage." 14 M.R.S.A. § 6321. At trial, however, U.S. Bank did in fact "produce evidence" that it owned the promissory note, the mortgage, and the subsequent assignments. *See U.S. Bank, N.A. v. Beedle*, 2020 ME 84, ¶ 11, 236 A.3d 433 ("The plain language of section 6321 requires 'that the mortgagee "produce evidence" of various documents and transactions,' including those establishing ownership of the mortgage").

### a. Federal Rule of Evidence 803(6) and the Admissibility of U.S. Bank's Business Records

In admitting these documents, the Court applied Federal Rule of Evidence 803(6). Rule 803(6) permits a court to admit a record if "(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . .; (C) making the record was a regular practice of that activity; (D) all these

conditions are shown by the testimony of the custodian or another qualified witness
. . .; and (E) the opponent does not show that the source of information or the method
. . . of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6).

U.S. Bank's sworn witness, Mr. Paterno, who worked for the mortgage servicer, testified that he had reviewed the original note and that it was identical to the copy of the note presented by Attorney Longoria. *Tr.* at 8:4-11. Attorney Longoria also stated that the original was produced during mediation with Ms. Moore. *Id.* at 8:19-20. Upon further questioning by Attorney Longoria, Mr. Paterno stated that he had reviewed the loan documents and loan history in the case and that the servicer retained the documents as business records throughout the history of the loan. *Id.* at 9:13-10:6. Attorney Longoria also established that the note, mortgage, and other origination documents that the servicer retained as business records had also been retained by the custodian for the investor. *Id.* at 10:8-19. Through Mr. Paterno's testimony, U.S. Bank established each of the record exception requirements under Rule 803(6) allowing the Court to admit the mortgage note into evidence. *See Tr.* 9:13-10:18.

Rule 803(6) places a burden on the proponent of the document to demonstrate that the conditions of the Rule have been met either by presenting the testimony of "the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." FED. R. EVID. 803(6)(D). U.S. Bank did just that both with Mr. Paterno's testimony and with the certifications on the documents.

Once the proponent has complied with the conditions for admission, Rule 803(6)(E) places the burden on the objecting party to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6)(E). The Court offered Ms. Moore the opportunity to question Mr. Paterno, but she declined to do so, and then she walked out of the courtroom in the middle of the trial. *See Tr.* at 19:4-5. Ms. Moore thus failed to demonstrate that the documents "indicate[d] a lack of trustworthiness," FED. R. EVID. 803(6)(E), and the documents were properly admitted as records of a regularly conducted business activity in accordance with Rule 803(6). Moreover, given her exiting the courtroom in the middle of trial, Ms. Moore is hardly in a position to raise issues that she could have presented but failed to do so by leaving.

### b.   Federal Rules of Evidence 1002 and 1003 and the Requirement of an Original

The Court similarly rejects Ms. Moore's repeated objections to the use of a certified copy of the note to demonstrate proof of ownership. Federal Rule of Evidence 1002, also known as the "Best Evidence Rule," generally requires "[a]n original writing . . . in order to prove its contents." FED. R. EVID. 1002. However, the Federal Rules of Evidence provide that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. A "duplicate," in turn "means a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately produces the original." FED. R. EVID. 1001. The First Circuit has stated that the

14

"exception" to the use of a copy—when there is a question as to the original's authenticity—"is for extreme situations where there is reason to suspect extensive prejudicial manipulations." *Asociacion De Periodistas De P.R. v. Mueller*, 680 F.3d 70, 80 (1st Cir. 2012) (concluding that an incomplete duplicate of a video did not rise to the level of "extensive prejudicial manipulations").

As with its ruling on the business records exception, the Court concludes that Ms. Moore has not met her burden of showing an error in the Court's application of Rules 1002 and 1003 at trial. Indeed, especially as regards the promissory note itself, Ms. Moore's objections are entirely untenable. The trial transcript reveals that just before trial, Ms. Moore asked to see the original promissory note and Attorney Longoria showed it to her. *Tr.* at 6:13-17.

Then, at trial, U.S. Bank laid an appropriate foundation for the admission of the promissory note through its witness, Michael Paterno. Mr. Paterno testified that he "reviewed [the original] note . . . and it does purport to be the same as the copies that [were before the court], which are the copies that [were] in [the servicer's] business records." *Tr.* at 8:9-11. Ms. Moore claimed that pages were added after she signed the document, *see id.* at 10:25, but did not elaborate further. The Court offered Ms. Moore an opportunity to cross-examine Mr. Paterno, which she declined, *see id.* at 12:22-24; 13:14-17, and also informed Ms. Moore that she would have an opportunity to testify herself later in the trial if she wished to do so, yet Ms. Moore exited the courtroom midway through the trial and did not return. *Id.* at 13:10-11; 19:6-7. Finally, as regards the promissory note, the Court compared the original to

the marked copy of the promissory note and concluded that the copy was admissible under Rule 1003. *Id.* at 10:20-14:13.

In light of Mr. Paterno's sworn testimony that the original and the duplicate are identical and in the absence of any evidence supporting Ms. Moore's assertions, Ms. Moore has neither raised a genuine issue as to the authenticity of the original note, nor has she demonstrated circumstances where it would be unfair to admit the duplicate in lieu of the original. *United States v. Mulinelli-Navas*, 111 F.3d 983, 989-90 (1st Cir. 1997) (citing *United States v. Balzano*, 687 F.2d 6, 8 (1st Cir. 1982) ("declining to question authenticity of duplicate where appellant failed to proffer testimony, beyond statement that evidence was not the original, of altering or tampering")); *HICA Educ. Loan Corp. v. Webster*, No. 2:11-cv-146-NT, 2012 U.S. Dist. LEXIS 24828, at *19 (D. Me. Jan. 27, 2012) ("Here, the defendant has not raised any question as to the authenticity of the original bill of sale or its attachments.  In addition, the Peace declaration states under oath that the copy of the bill of sale, the only document challenged by the defendant . . . is a 'true cop[y]' of the original. . . . The defendant's objection cannot reasonably be construed to invoke the second exception in Rule 1003").

Moreover, this Court has consistently concluded that a duplicate is admissible where the objecting party was given an opportunity to cross-examine the witness on the validity and authenticity of the disputed document. *United States v. Enzinger*, No. 2:11-CR-62-DBH, 2011 U.S. Dist. LEXIS 109346, at *5 (D. Me. Sep. 23, 2011) ("[T]he defendant was able to explore th[e] question [of authenticity] thoroughly at

trial, and there was neither unfairness in admission of the scanned document, nor a genuine question of authenticity"); *United States v. Young*, No. CR-09-140-B-W, 2010 U.S. Dist. LEXIS 34074, at *4-5 (D. Me. Apr. 6, 2010) ("Mr. Young is free to explore on cross-examination, in direct examination of his own witnesses, or in argument the foundational issues that he has raised in objection").

Upon the Court's admission of the mortgage note, U.S. Bank thereafter moved for admission of a copy of the mortgage and a series of assignment, all of which U.S. Bank stated were "certified copies." *Tr.* at 15-16. Ms. Moore again objected to these documents as being "cop[ies] of . . . cop[ies]" and stated that she had not had a chance to look at these documents. *Id.* at 16:8-25. However, once the Court confirmed that the documents had been properly certified, the Court admitted them as public records under Rules 803(8) and 803(14) and as self-authenticating under Rule 901(b)(7). *Id.* at 18:3-10.

The Court finds no error under Rule 60(b). As a general rule, when submitting evidence to the court the movant must "authenticat[e] or identify[] [the] item of evidence, [and] . . . must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). However, under Rule 902, certain "items of evidence are self-authenticating [and] . . . require no extrinsic evidence of authenticity in order to be admitted" into evidence. FED. R. EVID. 902. One type of self-authenticating document is a "certified cop[y] of [a] public record[]" which is "[a] copy of an official record – or a copy of a document that was recorded or filed in a public office as authorized by law – if the copy is certified as correct by: (A)

the custodian or another person authorized to make the certification; or (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute or a rule prescribed by the Supreme Court." *Id.* 902(4)(A)-(B).

In this particular case, each of the documents offered by U.S. Bank were recorded in the Registry of Deeds for Cumberland County, Maine, and therefore are squarely "self-authenticating" documents. As public records, they were additionally admissible under Rule 803(14) which allows the admission of a record of a document that affects an interest in property if the record is admitted to prove the contents of the original document, the record is kept in a public office, such as the Registry of Deeds, and a statute authorizes recording documents of that kind in that office. *See* FED. R. EVID. 803(14). Each of U.S. Bank's exhibits was properly stamped by the Registry of Deeds. *See Bank of N.Y. Mellon v. Lezdey*, No. 13-11118-MLW, 2016 U.S. Dist. LEXIS 133885, at *6-7 (D. Mass. Sept. 28, 2016) ("[T]he copy of the assignment attached to the complaint is stamped as recorded at the registry and verified as a true and accurate copy of the assignment. . . . It is therefore properly authenticated . . . , and admissible as a duplicate" (affirming the magistrate judge's recommended decision)). To the extent that Ms. Moore continues to argue that these copies are inadmissible because they are not originals, that argument is foreclosed by the above discussion on Rules 1002 and 1003.

Finally, as U.S. Bank notes, Attorney Longoria presented Ms. Moore with the documents prior to trial, allowing her to examine them. *Pl.'s Opp'n* ¶ 9. Despite Ms. Moore's assertions that she had not seen these documents, the mortgage note,

mortgage, assignments, quitclaim assignment, and loan modification were provided to Ms. Moore as attachments to the Complaint and have remained on the docket as a matter of public record, since that time, and were provided to her again during discovery. Ms. Moore therefore cannot successfully argue that she has never seen these documents prior to trial.

### C.    Summary

The Court concludes that Ms. Moore's motion to vacate the foreclosure judgment is entirely frivolous. Her legal objections to U.S. Bank's foreclosure action run directly against the teachings of the Maine Supreme Judicial Court and the Court of Appeals for the First Circuit and are not well-taken. Her objections to the admission of copies of the promissory note, the mortgage, and the assignments are entirely without merit and, if they had any merit, Ms. Moore waived the right to object to the foreclosure judgment when she abruptly left the courtroom at the outset of the trial and never returned.

## V.    THE *COK* ORDER

On November 29, 2021, the Court issued a show cause order pursuant to *Cok v. Family Court of Rhode Island* ordering Ms. Moore[4] to show cause as to why the Court should not impose a filing restriction against her for future filings related to real estate or mortgages in the United States District Court for the District of Maine. *Show Cause Order Pursuant to Cok v. Family Court of Rhode Island* (ECF No. 219). On December 13, 2021, prior to expiration of the Court's November 29, 2021 Order to

---

[4]    Ms. Moore was one of several individuals ordered to show cause. *See Show Cause Order Pursuant to Cok v. Family Court of Rhode Island* (ECF No. 219).

Show Cause, Ms. Moore filed her motion to vacate the Court's November 15, 2021 judgment in favor of U.S. Bank. *Def.'s Mot.*

On December 23, 2021, the Court terminated is November 29, 2021, Order to Show Cause and entered a final *Cok* order restricting Ms. Moore from filing document involving real estate or mortgages without prior permission from this Court. *Order* (ECF No. 225); *Final Cok Order* (ECF No. 26). On January 3, 2022, U.S. Bank filed its opposition to Ms. Moore's motion to vacate the November 15 judgment. *Pl.'s Opp'n.* On January 20, 2022, Ms. Moore filed a response to U.S Bank's opposition. *Def.'s Reply.*

The Court imposed its final *Cok* Order after Ms. Moore filed her initial motion to vacate the judgment on December 13, 2021, but before Ms. Moore replied to U.S. Bank's opposition on January 20, 2022. Ms. Moore did not request leave of the Court to file her January 20, 2022, reply, as is necessary under the *Cok* Order. Nevertheless, given that Ms. Moore's January 20, 2022, filing is a reply to an opposition to a motion filed prior to the imposition of the *Cok* Order, the Court accepts Ms. Moore's January 20, 2022, despite this procedural misstep. Moreover, as the Court noted elsewhere, Ms. Moore's January 20, 2022, reply is a verbatim recitation of her December 13, 2021, motion to vacate and therefore the later filing added nothing for the Court's consideration. At the same time, Ms. Moore should be aware that should she wish to file further documents with the Court, she must formally request leave of the Court to do so as the Court's *Cok* Order requires.

20

## VI. CONCLUSION

The Court concludes that Ms. Moore has not met her burden under Rule 60(b) to vacate the Court's judgment and DENIES Ms. Moore's motion to vacate the Court's November 15, 2021, judgment of foreclosure and sale (ECF No. 224).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2022